FEDERAL LIFE INSURANCE COMPANY *v.* FRAZER.

[No. 23,859.   Filed December 8, 1922.]

1.  INSURANCE.— *Reinsurance.*— *Limiting Liability.*—*Statutes.*— Where one life insurance company took over all the assets and liabilities of a mutual company organized under §4739 *et seq.* Burns 1914, Acts 1897 p. 318, and reinsured its risks under the authority and subject to the provisions of §15 of that act (§4753 Burns 1914), the reinsuring company took the

risks as they existed at the time of the transfer, and they could not be modified by stipulations in a contract of reinsurance between the two companies, and an incontestible policy issued by the mutual company could not, by stipulations in the reinsurance contract authorizing the reinsuring company to charge reserve and impairment liens against the company and deduct the amounts thereof from the face of the policy, be changed into a reinsured policy for only one-third of the amount specified by the terms thereof. p. 571.

2. INSURANCE.— *Life Insurance.— Reinsurance.— Failure of Insured to Object to Terms of Contract.—Estoppel.*—The fact that insured, after constructive notice of the terms of a reinsurance contract and of the erroneous construction which the reinsurer gave to it, continued to pay premiums which the reinsurer accepted with actual knowledge of the authoritative construction given to such contract by the courts, could not estop the insured and the beneficiary from insisting that the policy be given the correct construction, and from claiming that the amount due under the policy could not be changed by stipulations in the reinsurance contract; there being no showing that the reinsuring company did or refrained from doing anything in reliance upon the conduct of insured which it otherwise would not have done or refrained from doing. p. 571.

3. INSURANCE.— *Life Insurance.— Reinsurance Contract.— Construction by State Insurance Department. — Beneficiary's Rights.*—The construction given a reinsurance contract by the state insurance department, permitting the reinsuring company to charge certain liens against a policy and deduct the amounts thereof from the face of the policy, could not affect the right of the beneficiary to recover on the policy according to its provisions. p. 573.

From Jackson Circuit Court; *Oren O. Swails*, Judge.

Action by Eliza B. Frazer against the Federal Life Insurance Company. From a judgment for plaintiff, the defendant appeals. (Transferred from Appellate Court under §1399 Burns 1914, Acts 1901 p. 565, §15.) *Affirmed.*

*C. A. Atkinson* and *T. M. Honan,* for appellant.
*Montgomery & Montgomery,* for appellee.

EWBANK, J.—Appellee sued on a policy of insurance

on her deceased husband's life, and recovered a judgment for $2,180, being the face of the policy, with interest from the death of the insured.   Appellant filed three affirmative paragraphs of answer, admitting its liability for $696.90, which it averred it had offered to pay, and also averred that it brought that sum into court for payment to appellee, as the total amount of its debt, besides setting up other facts, hereinafter stated, as a defense to any larger demand.   A demurrer was sustained to each paragraph of affirmative answer, to which ruling appellant excepted.   It filed a motion for a new trial, which was overruled and it excepted.   Error is assigned upon sustaining demurrers to each affirmative paragraph of the answer, and overruling the motion for a new trial.   The brief of appellant states that the fourth paragraph of answer alleges all the facts stated in the others, with certain additional facts, and that the motion for a new trial presents for decision the same question of law as the demurrers to the answer. Therefore, we shall only consider the sufficiency of the fourth paragraph of answer.

The basis of appellee's demand consists of the following facts, alleged in the complaint and answer:

In 1893, the Masons' Union Life Association, an Indiana corporation, issued to appellee's decedent a policy of insurance on his life, payable to appellee, by which it promised to pay $2,000 to her upon satisfactory proof of his death, in consideration of the payment of $5.30 per month for fifteen years, and dues in the association of fifty cents per month, and after fifteen years the payment of such an amount as should enable the reserve of the policy and its income to carry the policy.   It stipulated that after three years from its date it should "be incontestable," but should become null and void "if the insured shall not pay the instalments and dues as herein set forth, on or before the time mentioned for

payment thereof." Thereafter, the Union Life Insurance Company was incorporated in Indiana, under Acts 1897 p. 318 (§4739 *et seq.* Burns 1914), and took over the business of the Masons' Union Life Association, and became liable on this policy as if written by it.

On July 16, 1904, the appellant, an insurance company organized under the laws of Illinois, entered into a contract with the Union Life Insurance Company, which provided that the latter company thereby transferred all its risks to and reinsured them in the appellant company, and should transfer, convey and deliver to appellant all its property, papers and assets, in consideration of which appellant accepted the same and agreed to reinsure (subject to all the terms and conditions and to the extent as expressed in said contract) all the living members and policy holders of the Union Life Insurance Company then in good standing, which description included appellee's decedent; and that the insured should pay to appellant, instead of said Union Life, "the premiums or assessments, required by and in accordance with the terms of" his policy, as they became due and payable under its provisions. All the assets of the Union Life Insurance Company were thereupon taken over by appellant, and it issued to appellee's decedent a certificate, reciting that it was a "policy of reinsurance" to be attached to his policy, designated by number, and that appellant guaranteed any liability which might be established on account of said policy, but subject in each instance to the provisions of the reinsurance contract, and (also subject thereto) that "no change of policy * * * further than the attachment of this reinsurance policy to said policy * * * is necessary in order to bind the said Federal Life Insurance Company to the payment of the same," the reinsurance contract being four times referred to therein as containing conditions to which its provisions were subject.

This reinsurance policy was dated and issued July 16, 1904, and thereafter the insured continued to pay the premiums of $5.30 each month until November, 1911, and in that month and thereafter each month until his death, he paid $7.92. The policy was in force when the insured died, and all conditions were complied with by the insured and the beneficiary. But appellant was an "old line" insurance company which, under its charter, was required to and did place the reinsured policy on a legal reserve basis; that the Union Life did not accumulate nor maintain a reserve to the credit of its policies, and appellant had no right to take funds paid to it by other policy holders or accumulations thereon to create a reserve on said policy, and therefore charged a reserve lien on the face of the policy for that purpose, in the amount of $556.68, together with interest thereon at six per cent., and because of the age of the insured at the time his policy was reinsured, an "impairment lien" of $838.55 was also charged against the face of it, but without interest. And appellant having fixed its premium rate for a policy such as this at $7.92 per month, and the monthly premiums paid by the insured during the first seven years and four months being only $5.30, appellant also charged as a loan $2.62 each month, in the total sum of $230.56, and charged interest on these amounts as they accrued. In other words the $2,000 policy was charged by appellant with reductions of $556.68 and $838.55, respectively, as of the date of reinsurance, and thereafter was further charged with interest on the "reserve lien" in the amount of $504.47, with difference in premiums of $230.56, and interest on such difference of $129.56, while the premiums paid were credited in discharge of the "impairment lien," so that the amount due on the policy, by appellant's method of calculation, was thereby reduced from $2,000 to $696.90. In April, 1905, (nine months after the rein-

surance policy was issued) appellant notified the insured in writing of the liens charged against his policy, and that they were charged under and by virtue of the terms and conditions of the reinsurance contract, and of their amount, and that the Federal monthly premium for a policy similar to his was $7.92, while the Union Life rate was $5.30. It does not appear that appellant then asked him to pay the higher rate, or suggested that he would be charged with the difference, or with interest thereon.

In October, 1911, appellant again notified the insured in writing that it had charged said liens against his policy, and also that it had charged him with $230.56 as a difference in premiums, and with $51.61 as interest thereon, and from that time until his death he paid the increased premium. But at no time did the insured object to said liens, or to appellant charging them against his policy, or assert a claim that any of them were not valid and binding liens against his policy contract.

The reinsurance contract, as executed by appellant, was filed with the insurance department of the State of Indiana, in 1904, where the insured could have examined it or obtained a copy, and the insured never asked appellant for any information as to its terms and conditions or for a copy, but appellant would have furnished him such information if he had asked. At the end of each calendar year the insurance departments of each of the States of Illinois and Indiana valued the outstanding policies of appellant to determine whether or not appellant was solvent and had the required reserve, and they computed the reserve on this policy in accordance with the terms of the reinsurance contract, and each year recognized the liens charged thereon as valid. The reinsurance contract, set out as an exhibit, contained certain clauses which appellant insists expressly provided that appellant might charge the liens against this policy and make the deductions from it, as

stated above.   We shall assume for the purposes of this appeal that appellant is right in its contention as to the language used in the reinsurance contract, but without deciding anything on that subject.

The Union Life Insurance Company having been organized under the provisions of Acts 1897 p. 318, *supra,* the reinsurance of its risks by appellant was

1. made under authority and subject to the provisions of §15 of that act (§4753 Burns 1914), which has been repeatedly construed to require that where the reinsuring company took over all the assets and liabilities of another company and reinsured its risks, the risks were taken as they existed at the time of the transfer, and could not be modified by stipulations in a contract of reinsurance between the two companies.   Therefore, an incontestable policy for $2,000 could not be changed into a reinsured policy for only one-third of that amount by what was written into such a contract.   *Federal Life Ins. Co.* v. *Petty* (1912), 177 Ind. 256, 97 N. E. 1011; *Federal Life Ins. Co.* v. *Kerr* (1909), 173 Ind. 613, 89 N. E. 398, 91 N. E. 230; *Federal Life Ins. Co.* v. *Weedon, Admr.* (1918), 68 Ind. App. 529, 118 N. E. 842; *Federal Life Ins. Co.* v. *Maxam* (1917), 70 Ind. App. 266, 117 N. E. 801, 118 N. E. 839; *Federal Life Ins. Co.* v. *Lillibridge* (1912), 51 Ind. App. 704, 98 N. E. 1015; *Federal Life Ins. Co.* v. *Risinger* (1910), 46 Ind. App. 146, 91 N. E. 533.

But it is insisted by appellant that the facts of the case at bar present certain new questions not before the courts in any of the cases cited.   The first of

2. these questions discussed in appellant's briefs is as to the effect upon the rights of appellee under the reinsured policy, which may have resulted from the failure of the insured to offer any objection when notified by appellant that liens in the amounts as stated, for the causes named, were "charged and then existing

against his policy contract * * * under and by virtue of said reinsurance contract and said reinsurance policy," and of his continuing to pay premiums monthly after being so notified. It does not appear that appellant ever expressly stated to appellee's decedent that he was no longer insured for $2000, or that the amount which would be paid at his death had been reduced, or that there was any consideration for an agreement to reduce that amount if such an agreement had been made, or that it ever furnished him with a copy of the reinsurance contract, or that he had actual knowledge of the provisions of that contract, or knowledge of appellant's claim that he was reinsured for a less amount than the face of his policy. Neither does it appear that appellant did or refrained from doing anything in reliance upon any conduct or statements of the insured which it otherwise would not have done or refrained from doing. In October, 1909, this court decided the case of *Federal Life Ins. Company* v. *Kerr, supra,* by which appellant's liability on reinsured policies such as the one under consideration was declared, and appellant continued for seven years afterward to accept monthly premiums from the insured, until his death in October, 1916. The fact that, with constructive notice of the terms of the reinsurance contract and of the erroneous construction which appellant gave to it, the insured paid premiums which appellant accepted with actual knowledge of the authoritative construction giving to that contract by the Supreme Court, could not estop the insured and the beneficiary from insisting that their policy be given the correct construction. *Hosford* v. *Johnson* (1881), 74 Ind. 479, 485, 486; *Taylor* v. *Griner* (1914), 56 Ind. App. 617, 622, 104 N. E. 607.

Appellant relies on the further alleged facts that the premiums charged by the Union Life Insurance Company were not large enough to create and maintain such

3. a reserve for its policies as appellant was required by law to keep, and therefore it charged against this policy a lien for the amount of such a reserve, and that the insurance departments of each of the States of Illinois and Indiana accepted appellant's construction of the policy and reinsurance contract now under consideration, in determining the value of appellant's policies each year, beginning in 1904, and "recognized" as valid the liens which appellant had charged against the policy sued on, and gave appellant credit for the same in amounts computed on that basis, as parts of appellant's assets. The construction which certain administrative departments of the state governments of this and other states may have given to these contracts, by their action, *ex parte,* in the absence of the insured and the beneficiary, could not affect the right of the beneficiary to recover on the policy according to its provisions, interpreted in the light of the statute by authority of which it was made. And if the appellant company reinsured a policy which made necessary a larger reserve than it then had, it did not thereby acquire a right to decrease the amount it would pay on maturity of the policy. If a bad bargain threatened to deplete the assets of the company, its necessities could not be a sufficient reason for refusing to pay the agreed amount when a reinsured policy should mature. Policies of insurance are not like shares of stock, the dividends on which may be withheld if losses are sustained by the company. And the desire to relieve its stockholders from a threatened reduction of dividends or possible assessment could not justify payment of an incontestable policy for $2,000 with a sum ascertained by charging it with liens for more than half of that amount, and with a constantly accumulating "difference in premiums," and interest on all these sums, so as to reduce the amount of the policy to one-third of its face, and

make it call for only $696.90, after the reinsuring company had collected premiums for twelve years. This seems to us a proper case for adding damages to the amount of the judgment. The death of appellee after submission of this cause has been suggested.

The judgment is affirmed as of the date of submission of this cause, with five per cent. damages and costs.